GEORGE H. DAVIDSON, Plaintiff, *v.* CITY OF ELMIRA et al., Defendants.

Supreme Court, Special Term, Chemung County, March 17, 1943.

*Lowell H. Teeter* for Elmira Housing Authority.

*Nathaniel L. Goldstein, Attorney-General (Arthur W. Mattson* of counsel), for Acting Commissioner of Housing of the State of New York.

*George H. Winner* for City of Elmira.

*Harry Moseson* for plaintiff.

PERSONIUS, J. This action is brought to enjoin the defendants from engaging in a housing project under the Public Housing Law (here called the " Act "), and to adjudge illegal and void a contract between the defendants, entered into for the purpose of carrying out such project.

The defendant, The Elmira Housing Authority (here called the " Authority "), is a corporation organized under chapter 79 of the Laws of 1942, to carry out the purposes of the Act in the city of Elmira. Section 30, as amended, of the Act provides for its organization and section 37, as amended, for its powers, including investigation into living conditions and the determination of the existence of insanitary and substandard housing conditions, et cetera.

This motion involves the construction of article XVIII of the Constitution of the State of New York, known as the Housing Article, and the Act.

Article XVIII of the Constitution adopted in 1938 provides in section 1, that the Legislature may provide *in such manner and by such means and upon such terms and conditions* as it may prescribe for (1) low-rent housing, (2) for clearance and reconstruction of substandard and insanitary areas, or (3) for both. Section 10 empowers the Legislature to make all laws necessary and proper therefor and that the article shall be construed as *extending powers limited by other articles* and not as imposing additional limitations. Section 2 empowers the Legislature " notwithstanding any provision in any other article of this constitution," in aid of its purposes, to provide capital and subsidies to municipal or public corporations, to authorize any city to guarantee the principal and interest on indebtedness and to grant or authorize tax exemptions for not more than sixty years.

By chapter 808 of the Laws of 1939, the Legislature enacted the Act and repealed the former State Housing Law, chapter 823 of the Laws of 1926 and amendments thereto. The Act was amended in 1941 and 1942. Section 2 declared certain city areas to be insanitary and substandard, the absence of an adequate supply of safe and sanitary dwellings, the necessity for the investment of public funds for the construction of standard housing facilities and that these conditions required the creation of agencies of the State for that purpose. Section 215, added in 1941, included, in the authorization for " low rent housing for persons of low income " (N. Y. Const. art. XVIII, § 1), defense housing projects, that is, projects to provide dwellings for persons of low income engaged in national defense. Section 217 limited the defense housing projects. It provides that the same should not be undertaken until the Authority in charge should find that there was a shortage of proper dwellings which impeded national defense. The section further provides that such finding " *shall be conclusive in any suit, action or proceeding.*"

The Authority adopted a plan for a project in the city of Elmira and the State, City and Authority entered into a contract by which the State agreed to loan to the Authority and the Authority to borrow money to finance the project. This action is brought to have said contract declared illegal and void and to enjoin defendants from acting thereunder.

The plaintiff contends: (1) that the action of the Authority under section 217 of the Act was arbitrary, capricious and without justification; (2) that neither the Legislature nor the Authority had adopted any standards of safe and sanitary dwellings or defined " persons of low income " or " low rent housing "; (3) that the delegation of authority by the Legislature to the Authority is unconstitutional; (4) that the tax exemption provision is in effect a City obligation, and that the City has incurred indebtedness in excess of statute and constitutional limitations; (5) that a gift or loan has been made contrary to section 1 of article XVIII of the Constitution; and (6) that the contract should have been submitted to a referendum by the City.

Generally, the constitutionality of this Act and similar acts has been upheld. (*Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333; *Matter of Mt. Hope Development Corp.* v. *James,* 258 N. Y. 510.) These New York holdings are in conformity with numerous authorities in other states, among which are *Housing Authority of City of Dallas* v. *Higginbotham* (135 Tex. 289; notes, 130 A. L. R. 1069); *Chapman* v. *Huntington Housing Authority* (121 W. Va. 319); *State of Florida ex rel. Harper* v. *McDavid* (145 Fla. 605; notes, 133 A. L. R. 365). These cases adjudicate most of the specific contentions here made by the plaintiff.

As to the first contention, general allegations of wrongdoing based upon undisclosed facts do not state a cause of action. (*Gerdes* v. *Reynolds,* 281 N. Y. 180, 183–184; *Lifshutz* v. *Adams,* 285 N. Y. 180, 185.) The complaint states alleged facts. It says, among other things, that the findings of the Authority are without foundation in fact, are based on no evidence or investigation, ignore relevant facts, adopt no standard of adequate and safe dwellings, and that in fact the saturation point had not been reached for adequate defense housing. Section 217 of the Act provides that the findings of the Authority " shall be conclusive in any suit, action or proceeding." This provision would seem to foreclose review by the court. (*Matter of Mt. Hope Development Corp.* v. *James,* 258 N. Y. 510, *supra; Johnson* v. *Michigan Milk Marketing Board,* 295 Mich. 644, 653; *Matter of Skinkle,* 249 N. Y. 172.) But the plaintiff contends

that the findings of the Authority may be reviewed if they are arbitrary and without any evidence to support them. (*Matter of Fabricius* v. *Graves*, 254 App. Div. 19; *Matter of Levitch* v. *Board of Education of City of New York*, 243 N. Y. 373.) The facts alleged in the present case do not support the plaintiff's contention that they were arbitrary, capricious, without justification and unsupported by the evidence.

The complaint annexes a copy of the contract and makes it a part thereof. The contract, in turn, refers to the application by the Authority for the loan " which application is made a part of this contract with the same force and effect as though fully set forth herein." The application, though not attached to the complaint, is thus made a part thereof. It was handed up on the argument. It finds as follows: " The number of industries located in and about the City of Elmira engaged and to be engaged upon defense contracts and the contemplated expansion of the present needs of the industrial plants and facilities are such that the Authority finds that within its territorial jurisdiction there is a shortage of adequate safe and sanitary dwellings which impedes the National Defense Program in the State of New York and City of Elmira, and that the necessary adequate, safe and sanitary dwellings would not otherwise be provided when needed for persons of low income engaged in National Defense activities." Incorporated in the application is the information and evidence upon which it is based. It contains maps showing, among other things, the substandard areas, the industrial areas, the vacant lands, residential sections, bus routes, proposed project sites, zoning, recreational facilities, water and gas facilities and photographs of the proposed sites, et cetera, annual earnings and existing improvements, physical classification of structures, assessments, number of units, wages of employees, rents, et cetera. In connection therewith the Authority says that it selected vacant sites, of low assessed valuation, close to schools, utilities and recreational facilities, one site in a slum area, very substandard, containing some partially demolished houses, not the subject of any application of private persons for a housing project, readily accessible to shopping districts. The report also contains an estimated value of the land, estimated construction costs and cost of operation, income and expense, and prevailing wage of employees in industries nearest the project. We think the report shows that the findings of the Authority were not arbitrary or capricious and shows sufficient evidence to support the findings and forbid review by the court. (*Bullock* v. *Cooley*, 225 N. Y. 566, 577–578; *Matter of Public Service Commission*, 217 N. Y. 61, 67; *Matter of City of New York* [*Ely Avenue*], 217

N. Y. 45, 59; *City of Denton* v. *Denton Home Ice Co.*, 119 Tex. 193; notes, 68 A. L. R. 872.) Section 37 of the Act gives the Authority power to hold hearings, subpœna witnesses, et cetera, but does not require it.

Of cases cited by plaintiff: In *Matter of Baird* v. *Board of Supervisors* (138 N. Y. 95), the court held that the action of the defendant Board in dividing Kings County into Assembly Districts was so grossly unfair and uneven, not to say ridiculous, that power to so act could not have been intended. It said (p. 115): " Undoubtedly there is a discretion to be exercised in the division by the board, and with the exercise thereof this court has as little inclination as right to interfere." *Weinfeld* v. *Knickerbocker Village, Inc.* (261 App. Div. 383), merely held that the Public Housing Law did not apply to the property in question. *Matter of Lyons* v. *Prince* (281 N. Y. 557) merely held that the Commissioner of Housing had no authority to order *structural* changes in the property in question, certain standards having been laid down by the Legislature.

The plaintiff's second contention is that neither the Legislature nor the Authority adopted any standards of sanitary dwellings, or defined persons of low income or low-rent housing. The Legislature defines " persons of low income ", " families of low income ", and " low rent housing " (Public Housing Law, § 3, subds. 18, 23; see, also, § 156 and § 215, subd. 2). The terms, " sanitary dwellings ", " persons of low income " and " low rent housing ", are relative terms and matters of judgment. Perhaps the Legislature could have specified in dollars what would have constituted low income and low-rent housing. Perhaps it could have specified what structural conditions, et cetera, are necessary to make a dwelling sanitary. However, standards of income and rent vary in different communities. We cannot say that the general definitions of the Legislature, leaving their application to the local Authority, are illegal or unconstitutional. Incomes and rentals vary in peace times and war times.

The third contention is that the delegation of authority to the local Authority is unconstitutional. We think it is constitutional. (N. Y. Const. art. XVIII, §§ 1, 10; *Matter of Public Service Commission*, 217 N. Y. 61, 67; *Burke* v. *Kern*, 287 N. Y. 203, headnote 2; *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.*, 281 N. Y. 187.) In the last case the court said (p. 194): " That the legislation is within the scope of the police power of the State, that the means and standards provided to carry out the legislative purposes are within the scope of the power and properly delegable to an administrative agency * * * is settled beyond further controversy * * *. There is no

invalid delegation of legislative power merely because the act on its face authorizes the Commissioner to fix and equalize prices, since the Legislature has provided the manner in which the Commissioner must act and the matters which he must consider as the basis for his order and that he must make findings as a preliminary to the issuance thereof * * *.''

The fourth contention is that the tax exemption is in effect a City obligation and the City has incurred indebtedness in excess of statutory and constitutional limitations. The loan contracted for is not to the *City* but to the *Authority*. Primarily the indebtedness is to be paid from the operation of the project. However, the contract and the statute fix some contingent liability in the nature of guarantee upon the City. They also fix liability on the City for unpaid principal and interest in case of *default* by the Authority. The City subsidy provided by sections 401 and 403 of the contract is to be paid, not in cash, but '' in the form of exemption of the project from local and municipal taxes '' as specified in the Act. The language of the Act and the contract postpones the liability of the City until such time as there is a default on the part of the Authority.

Furthermore, the Constitution (art. XVIII, § 5), the Act (§ 51, subd. 2; §§ 90, 91), and the contract exclude from any debt limitation of the City, all obligations, contractual or statutory, until there be an actual default. (*State of Florida ex rel. Harper* v. *McDavid*, 145 Fla. 605, *supra*; *Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110, headnotes 5 and 12; *Housing Authority of the City of Dallas* v. *Higginbotham*, 135 Tex. 289, *supra*.)

Subdivision 4 of section 52 of the Act authorizes a city to exempt projects from local and municipal taxation, and section 73 provides that subsidies may be in the form of such exemptions. Finally, it does not appear from the complaint that including all the indebtedness of the Authority to the State, the City's debt limitation would be exceeded.

The fifth contention is that the contract constitutes a gift or loan or extension of credit in violation of section 1 of article VIII of the Constitution. If it is, section 4 of article XVIII of the Constitution provides : '' Indebtedness contracted pursuant to this article shall be excluded in ascertaining the power of a city otherwise to create indebtedness under any other section of this constitution.'' There is no gift or loan in such a contract. (*Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110, *supra*, headnote 12.)

The plaintiff's sixth contention is that section 72 of the Elmira City Charter (L. 1906, ch. 477; amd. L. 1910, ch. 662) required the submission of the project to a referendum. Two questions arise: (1) Was it violated? (2) Does the section apply?

Section 73 of the Charter provides that the Common Council may not create any " pecuniary obligation " which shall not be payable within the year, but section 72 provides that whenever the Common Council is of the opinion that the expenditure of money for any special purpose is necessary, they may estimate the sum necessary for such purpose and submit it to a referendum.

In the present case the loan from the State is to the Authority, not the City. The project is assumed to be self-liquidating but it is agreed that the City (1) shall make certain payments in case of default, and (2) shall pay certain subsidies.

As to the subsidies, the statute and the contract provide that the City exempt from taxation *only the improvements* to be added to the real estate by the Authority. (Public Housing Law, § 52, subd. 4.) The City subsidies are not payable in cash but are to be in the form of such exemption from taxation. (Contract, § 403.) The result is that the City cannot be called upon to pay any of the subsidies in cash.

As to the guarantee of payment in case of default by the Authority during the coming years, we think it is not an obligation required to be submitted to a referendum. The Charter provision was apparently intended to cover the expenditure of moneys presently. The contract in question does not provide for any such payment. Aside from the subsidy payable by tax exemption, it requires payment *only* in the event of a default by the Authority. The City's liability is contingent upon the Authority's default. Such contingent liability is not a City debt within the meaning of limitations on the power of a city to incur indebtedness. Section 73 of the Charter is a limitation on the power of the City to create a present debt. " In determining whether a contract is valid and enforcible, in so far as debt limit provisions are concerned, the validity must be determined as of the time it was made. If at that time it did not create an indebtedness within the prohibition against the amount of municipal indebtedness, subsequent events [contingencies] cannot change its nature so as to make it such a forbidden indebtedness." (6 McQuillin on Municipal Corporations [2d ed.] § 2371.) In *Weston* v. *City of Syracuse* (17 N. Y. 110) the headnote of the report of the case reads, in part: " The obligation

of a contract does not become a debt within the sense of the prohibition of the charter until money becomes payable according to its terms." *Leggett* v. *Bank of Sing Sing* (24 N. Y. 283) is not in point but in the dissenting opinion (three judges dissented), it is said (p. 291): " In ordinary parlance, as well as in statutes, and in ordinary legal acceptation, a distinction is recognized between a debt, although not actually payable * * * and a ·contingent liability which may ripen into an absolute liability and become a debt in the ordinary sense of that term. * * * a debt signifies whatever any one owes, and he does not owe that for which he is only conditionally or provisionally liable. · * * * The obligation of a contract does not become a debt, within the sense of the·prohibitions of a city charter forbidding the common council from authorizing an expenditure within the current year exceeding the amount of the annual tax levy, until money becomes payable according to its terms." (See, also, *Utica Water-Works Co.* v. *City of Utica,* 31 Hun 426, 341; *Saleno* v. *City of Neosho,* 127 Mo. 627, and cases cited at p. 641; *Ambrozich* v. *City of Eveleth,* 200 Minn. 473, 485, notes, 112 A. L. R. 278; notes, 103 A. L. R. 1160, 1161, citing many cases, including *Walla Walla City* v. *Walla Walla Water Co.,* 172 U. S. 1, 19.) In the last-cited case the question was examined at length. At page 20 the court said: " * * * the annual rental did not become an indebtedness within the meaning of the charter until the water appropriate to that year had been furnished. If the company had failed to furnish it, the rental would not have been payable at all, and while the original contract provided for the creation of ·an indebtedness, it was only upon condition that the company performed its own obligation."

Here the City's guarantee becomes a debt only if and when the Authority defaults. Under the authorities it is not a debt and, therefore, not a " pecuniary obligation ", although upon a default by the Authority it might become a debt. Therefore, the contract does not violate the Charter. How could the Common Council " estimate " the sum necessary to be raised to meet its guarantee until the default occurred?

*Second,* does the Charter apply? Section 72 is not expressly repealed. It is not impliedly repealed *in toto*. But, without requoting, both the Constitution and the Act are very broad and contain provisions subjecting all other provisions or restrictions of the Constitution to article XVIII and indicate an intent to make that article and the Act superior to other provisions of law, in carrying out public housing projects. They indicate an

intent that any project or loan carried out in the manner therein prescribed shall be valid without more, in other words, without complying with the provisions of city and village charters, or village and town laws. To that extent we think the requirements of section 72 of the City Charter are made nonapplicable to the contract in question. Section 1 of article XVIII of the Constitution gives the Legislature power to prescribe the manner, means, terms and conditions for carrying out projects. By section 95 of the Act, the Legislature authorized any municipality to guarantee the principal and interest of indebtedness contracted by an authority. In *Crawford* v. *Johnston, Governor*, 177 S. C. 399, the statute provided for the issuance of bonds of the State for the purpose of building hospitals, schools, et cetera. The Constitution provided that the Legislature " is forbidden to create any further debt or obligation, either by the loan of the credit of the State, by guaranty, endorsement .or otherwise * * * without first submitting the question as to the creation of such new debt * * * to the qualified electors " of the State. The statute provided that the bonds should be payable, first, from the gross revenues of the State institution, second, from the gross receipts from certain excise and license taxes. However, the bonds were *a general obligation of the State*. The court said (p. 478) : " This court has held a number of times that obligations of the same character as these bonds, secured by the pledge of a fund which might reasonably be expected to be sufficient to meet the obligation without resorting to the levy of a property tax, did not constitute bonded debt within the meaning of the constitutional limitations, notwithstanding that the full faith, credit, and taxing power of a political subdivision were pledged for the payment of the obligations." In other words, the bonds being issued in compliance with the act authorizing them, a referendum provided by other law was unnecessary. Such appears to be the case here.

We are cited to and have found no controlling authority on the several questions raised. For this reason and risking an accusation of prolixity, we have considered the questions at length.

In considering the constitutionality and legality of statutes, courts of original jurisdiction, under well-settled principles of law, should not declare them unconstitutional unless the violation is plain and patent. (*Matter of Mortgage Commission,* [*1175 Evergreen Ave.*] 158 Misc. 158, 160, affd. 270 N. Y. 436; *People* v. *Berner,* 170 Misc. 501, 505; *People* v. *Adduci,* 176 Misc. 697, 700, citing *People* v. *Reed,* 276 N. Y. 5.)

It is not within the province of the court to pass upon the wisdom of a statute conferring powers upon a municipality or other public body, or the wisdom of the municipality in exercising the powers conferred. (*City of Denton* v. *Denton Home Ice Co.*, 119 Tex. 193, *supra.*) Boards may err in judgment. All men do not see alike, but as long as there is no fraud or corrupt motives and it does not act arbitrarily the judgment of the board must be accepted and cannot be reviewed by the courts. In the present case the Authority acted upon such investigation and evidence as to preclude review by the court. Arguments are presented here which might well have been presented to the Authority or to the Common Council. There was opportunity to do so. No action was taken until the contract had been made, negotiations had to acquire property, condemnation proceedings started and conducted, plans prepared and bids called for.

We conclude that the complaint, containing as it does the contract, the report and findings of the Authority, does not state a cause of action.

Motion granted. No costs. Submit order accordingly.