BACON *v.* CITY OF DETROIT.

1. EQUITY—JURISDICTION—AMOUNT INVOLVED.

Suit to restrain threatened misuse of city funds by performance of contract between county and city located therein may be maintained by city taxpayer notwithstanding failure to show interest or damage of $100, the statute providing for such requirement having been repealed (Act No. 183, Pub. Acts 1903, repealed by Act No. 216, Pub. Acts 1905; 3 Comp. Laws 1929, § 13943).

2. JUDGMENT—RES JUDICATA.

Question as to validity of contract between city and county raised but not necessary to decision nor decided in previous suit between another taxpayer and the municipal corporations *held,* not *res judicata* of issue in present suit.

3. ELECTIONS—MUNICIPAL CORPORATIONS—PERMISSION TO ESTABLISH NUISANCE—FORM OF BALLOT.

Ballot putting question as to granting permit by the city to county in which it was located to construct within city limits "four incinerators to be used for the disposal of garbage and rubbish collected within the limits of the city" *held,* to have submitted for approval of city electors matter of establishment of possible nuisance within the city thereby satisfying statute providing for submission to electors proposals in "manner and form" as legislative body of the municipality should direct, details thereof such as reservation to county of right to contract with other cities, villages and townships within the county for incineration service being an incident not required to be submitted to popular vote (1 Comp. Laws 1929, § 2482 *et seq.*).

4. MUNICIPAL CORPORATIONS—CONTRACTS FOR FUTURE SERVICES.

A contract for future services, to be paid for as rendered, is not an incurring of indebtedness within meaning of bonding limitations on a city.

5. SAME—INCINERATION SERVICE—TERMS—CHARTER—ADVANCE LEVY OF TAX.

Contract for incineration service to be furnished by county in which city is located requiring latter, among other things, to pay annually $460,000 for 10 years, which included $100,000 payment for retirement of bonds and interest, *held*, not *ultra vires* because no tax had been levied to cover the entire contract obligation as provided by city charter for "work to be done" where charter also provides that commissioner of public works should supervise collection and disposal of garbage in manner provided by common council and, with its approval, contract therefor (Detroit City Charter, title 4, chap. 8, § 5, title 6, chap. 7, § 2).

6. SAME—CONTRACTS—TIME LIMITS.

Under charter providing for removal and distribution of garbage under supervision of commissioner of public works and authorizing him to contract therefor, subject to the approval of the common council, but setting no limit of time on garbage contracts, such contracts may be made for a reasonable time (Detroit City Charter, title 4, chap. 8, § 5).

7. SAME—ADVANCE LEVY OF TAX—10-YEAR CONTRACTS.

Charter provision requiring that tax or assessment be levied to defray cost of work to be done for city as a condition precedent to commencement thereof requires a reasonable construction to protect city against official extravagance but not to prevent city government from exercising its granted or necessarily implied powers and, so construed, does not require advance levy of tax to cover the whole amount of the annual payments under 10-year contract for incineration service (Detroit City Charter, title 6, chap. 7, § 2).

8. SAME—ADVANCE LEVY OF TAXES—CONTRACT SUBJECT TO CHANGE OF TOLL.

Charter provision requiring that tax or assessment be levied to defray cost of work to be done for city as a condition precedent to commencement thereof *held*, inapplicable to 10-year contract between county and city located therein whereby former agreed to furnish garbage and rubbish incineration service to latter for a toll subject to future increase or decrease as the parties might find contract tolls unreasonable from time to time, since amount of tax over the term cannot be determined in advance (Detroit City Charter, title 4, chap. 8, § 5, title 6, chap. 7, § 2).

9. Same—Circumvention of Charter—Actual Fraud.

    Claim that contract by county to furnish garbage and rubbish incineration service to city located therein was a mere subterfuge to circumvent debt limitation in latter's charter not accompanied by claim of actual fraud other than such circumvention *held*, insufficient to require invalidation of the contract (Detroit City Charter, title 4, chap. 8, § 5).

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 20, 1937. (Docket No. 141, Calendar No. 39,770.) Decided November 10, 1937. Rehearing denied December 15, 1937.

Bill by Owen S. Bacon against City of Detroit and County of Wayne, municipal corporations, and some of their officers to restrain performance under an incinerator contract. Bill dismissed. Plaintiff appeals. Affirmed.

*Edmund J. Stafford* and *Henry H. Roberts,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, *John H. Witherspoon,* Assistant Corporation Counsel, *Duncan C. McCrea,* Prosecuting Attorney, and *Garfield A. Nichols,* Assistant Prosecuting Attorney (*Oscar A. Kaufman,* of counsel), for defendants.

Fead, C. J. Plaintiff, on behalf of himself and all other taxpayers of the city of Detroit, filed bill of complaint to enjoin performance of a certain incinerator contract between the city of Detroit and the county of Wayne, and for other relief incidental thereto.

Defendants moved to dismiss the bill for want of equity, lack of right in plaintiff to sue, and because of former adjudication of the issues in *Jones* v. *City of Detroit,* 277 Mich. 272. The court granted the motion to dismiss.

In substance, the bill charges that the city of Detroit made application to the Public Works Administration of the United States for part grant and part loan of about $1,400,000 to construct four incinerators in the city; that the application was denied because the city could not issue the necessary bonds therefor, as it already had exceeded its legal bonding limit; that, thereupon, the county of Wayne made application for the grant and loan and it was accepted by the government on condition that the city enter into a contract to use the incinerators for 10 years; that the city entered into the contract and the application of the county was approved; that the contract provides for annual payment by the city to the county of $460,000 and the conveyance, without consideration, of four sites for the incinerators, worth $81,400; that the contract price of $460,000 includes an amount of $100,000 per year to pay the bonds issued by the county of Wayne, and interest, in addition to a reasonable charge for the incinerator service; and that the whole project, as conceived and contracted, is a subterfuge and illegal and an expensive fraud upon the taxpayers of the city of Detroit.

The statute, Act No. 183, Pub. Acts 1903, requiring taxpayers to show interest or damage of $100 to maintain suit to restrain a threatened misuse of city funds was repealed by Act No. 216, Pub. Acts 1905, and is not now the law. 3 Comp. Laws 1929, § 13943. Plaintiff may maintain the suit. *Carrier* v. *State Administrative Board,* 225 Mich. 563; *Freeland* v. *City of Sturgis,* 248 Mich. 190.

In *Jones* v. *City of Detroit, supra,* the question of the validity of the contract between the city and county was raised but not decided. Nor was it necessary to decision. Consequently the point is not *res judicata* and it may be tried again. *Leib* v. *Bostwick,* 256 Mich. 277.

In the *Jones Case* it was held that the county could not establish the incinerators within the limits of the city of Detroit without a permit authorized by vote of the electors of the city. The matter was submitted to popular vote, pending decision in the *Jones Case,* and the vote was favorable. Plaintiff contends, however, that the vote was ineffective because the question was improperly and fraudulently stated on the ballot. With criticized words italicized, the ballot read:

"Do you favor the granting of a permit by the city of Detroit to the county of Wayne, giving said county permission to construct within the limits of the city of Detroit four incinerators to be used for the disposal of garbage and rubbish *collected within the limits of the city of Detroit,*" etc.

The claim is that the ballot was deceptive, particularly because it did not set out the fact that the contract between the city and the county reserves the right to the county to contract with other cities, villages, and townships within the county for the incineration service.

The statute, 1 Comp. Laws 1929, § 2482 *et seq.,* provides that the proposal shall be submitted to the electors in "manner and form" as the legislative body of the municipality shall direct.

The purpose of the statute is to prevent the establishment of a possible nuisance in the city without the approval of the people. The details of the use of the incinerators are not required to be submitted to popular vote. The disposal of garbage for the city of Detroit was the main purpose of the project and the reservations in the contract were merely incidental; the ballot did not declare the project to be for the exclusive disposal of Detroit

garbage and the bill contains no allegations that any of the electors were actually deceived, nor does it indicate popular misunderstanding of a substantial nature. The vote showed the required approval of the thing which the statute required to be approved and was sufficient.

Plaintiff further contends that the contract increases the "funded and bonded" debt of the city which is already in excess of the legal limit.

"A contract for future services, to be paid for as rendered, is not an incurring of indebtedness." *Ludington Water Supply Co.* v. *City of Ludington,* 119 Mich. 480, 491.

See, also, *City of Denver* v. *Hubbard,* 17 Col. App. 346 (68 Pac. 993); *Walla Walla City* v. *Walla Walla Water Co.,* 172 U. S. 1, 19 (19 Sup. Ct. 77); 103 A. L. R. 1160, note.

Plaintiff also contends the contract is *ultra vires* because no tax had been levied to cover the contract obligation as provided by title 6, chap. 7, § 2, of the charter of the city of Detroit which reads:

"No contract shall be let or entered into for the construction of any public work, or for any work to be done, or for the purchasing or furnishing of supplies for said city not herein provided for, and no such public work, performance, purchasing or supplying shall be commenced until approved by the common council, and until the contract therefor has been duly approved and confirmed by the common council, and a tax or assessment levied to defray the cost and expense of the same, and no such work, supplies and materials shall be paid for or contracted to be paid for, except out of the proceeds of the tax or the assessment thus levied."

Plaintiff's contention is that the incinerator contract is included in the phrase "work to be done" in section 2, and that the whole service charge for the

period of 10 years must be covered by a tax levied in advance of the contract in order to validate it. The charter provides for the removal and distribution of garbage and, in setting out the powers of the commissioner of public works, provides that he shall supervise the collection and disposal of the garbage in the manner provided by the common council and, with its approval, may contract therefor. Title 4, chap. 8, § 5.

Garbage disposal is a work which, in the city of Detroit would require an extensive plant and a contract therefor could naturally cover a term of years. As the charter puts no limit of time on garbage contracts the rule is that the common council may make them for a reasonable time. *City of Saginaw* v. *Consumers Power Co.*, 213 Mich. 460, 476; *East Jordan Lumber Co.* v. *Village of East Jordan*, 100 Mich. 201. Plaintiff does not deny the power of the city to make a long-time contract but as stated in his brief "makes no issue of the term of years the contract covers."

Section 2 must be given a reasonable construction, protective of the city against official extravagance but not to hamstring the city in the exercise of its granted or necessarily implied powers.

In this connection it also may be noted that under chapter 11 of title 4 of the charter the public lighting commission is authorized to make a contract for the lighting of public buildings and places for any period not exceeding 10 years.

Under the charter, taxes are levied and collected annually. It would be wholly unreasonable to adopt a construction of section 2 which requires taxes to be levied years in advance of their need and the money held for year-to-year distribution on contract. We think section 2 was not intended to require the advance levy of a tax to cover the whole amount of

the annual payments to be made upon contracts for a term of years which the council was authorized to make. The construction contended for would practically nullify other parts of the charter and forbid long-term contracts otherwise authorized.

The contract at bar offers another reason for the nonapplication of section 2. It provides for future increase or decrease of the toll to be paid by the city if the parties find the contract tolls unreasonable from time to time, and, if the county contracts with other municipalities for disposal of garbage the receipts therefrom work a reduction of the charge against the city of Detroit. Consequently, the amount of the tax over the term cannot now be known.

Plaintiff further urges that the project is a fraud upon the people of the city because it is a mere subterfuge to circumvent the debt limitations in the charter and will be expensive.

Both counsel, in their briefs, resort to proceedings of the common council, plaintiff to claim an excess cost of $160,000 per year and defendant to claim a saving of $500,000 per year, by reason of the project. Plaintiff also points out that the council proceedings demonstrate that the city will pay to the county the amount of the bonds it issues for the construction, with interest, and at the termination of the 10-year period the property will still belong to the county. The terms of the contract are not for our consideration in the absence of actual fraud.

There is no charge in the bill of actual fraud, other than circumvention of the charter. If, and we so assume because it is charged in the bill, the indirect method was used because the direct method was not feasible, this is the situation: The common council, deeming the project beneficial to the city, attempted

to obtain the government grant and loan directly; unable to do so for legal reasons it then worked out a comparatively similar result, but not so beneficial to the city, by other means which were legal. There is no fraud in reaching a desired end by legal means even though other means to the end would be illegal.

Affirmed, with costs.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.