WALINSKE v. DETROIT-WAYNE JOINT
BUILDING AUTHORITY.

1. MUNICIPAL CORPORATIONS—CONTRACTS FOR SERVICES TO BE PAID
FOR AS RENDERED.
A contract for future services, to be paid for as rendered, is not
an incurring of indebtedness by a municipality, limited in the
amount of indebtedness it may incur.

2. FRAUD—NATURE OF FRAUD.
There is no fraud in reaching a desired end by legal means even
though other means to that end would be illegal.

REFERENCES FOR POINTS IN HEADNOTES
[1] 38 Am Jur, Municipal Corporations, §§ 463–465.
[1] Instalments payable under continuing service contract as present indebtedness within organic limitation of municipal indebtedness. 103 ALR 1160.
[3, 13, 17] 16 Am Jur, Declaratory Judgments, §§ 9–11, 18, 34.
[3, 13, 17] Declaration of rights or declaratory judgments. 12 ALR
52; 19 ALR 1124; 50 ALR 42; 68 ALR 110, and 87 ALR 1205.
[5–7] 38 Am Jur, Municipal Corporations, §§ 466, 467, 468 et seq.
[5–7] Lease of property by municipality or other political subdivision, with option to purchase same, as evasion of constitutional
or statutory limitation of indebtedness. 71 ALR 1318, and 145
ALR 1362.
[5–7] Pledge or appropriation of revenue from utility or other
property in payment therefor, as indebtedness within constitutional or statutory limitation of indebtedness of municipality
or other political subdivision. 72 ALR 687; 96 ALR 1385, and
146 ALR 328.
[6] 43 Am Jur, Public Securities and Obligations, § 52 et seq.
[8] 38 Am Jur, Municipal Corporations, § 435.
[8] What constitutes separate and independent political units within the rule permitting separate computation of constitutional
debt limit notwithstanding overlapping or identical boundaries.
171 ALR 729.
[10] 38 Am Jur, Municipal Corporations, § 497.
[11, 12, 15] 38 Am Jur, Municipal Corporations, § 401.
[11] Power of municipality to extend aid to improvement district
organized within its own limits. 50 ALR 1208.
[17] 16 Am Jur, Declaratory Judgments, § 59.
[18] 14 Am Jur, Costs, § 91.

3. APPEAL   AND   ERROR — QUESTIONS   REVIEWABLE — UNEXECUTED
LEASE.

In suit for declaration of rights involving the construction, and
operation by a joint county-city building authority of a build-
ing to be used jointly by county and city which is the county
seat, where lease to respective incorporating parties has not
been executed, the Supreme Court cannot pass upon claimed il-
legality thereof.

4. CONSTITUTIONAL LAW — CITIES — COUNTIES — ADMINISTRATIVE
FUNCTIONS—RENTAL OF SPACE.

It is an administrative function of the city and county to enter
into contracts for rental of space for governmental purposes.

5. BONDS—REVENUE BONDS—GOVERNMENTAL UNITS—BONDED DEBT.
Revenue bonds may be issued by a governmental unit to furnish
public facilities without increasing its bonded debt, where the
bonds are to be paid for by the users of such facilities (CL
1948, § 141.101 *et seq.*).

6. SAME—REVENUE BONDS—GOVERNMENTAL UNITS.
The raising of funds by governmental units by the issuance of
revenue bonds payable from users of governmental service pro-
vided by such funds is a valid method of raising such funds
(CL 1948, § 141.101 *et seq.*).

7. CONTRACTS—LEASES—GOVERNMENTAL UNIT—DEBT LIMITS.
Where a contract of lease for space by a governmental unit is,
in fact, intended as a lease, even though coupled with an op-
tion to acquire title, if the obligations are met from current
revenues from year to year, they cannot be considered debts
in the constitutional sense, even though the aggregate of pay-
ments should exceed the constitutional, statutory, or charter
limitations.

8. BONDS—REVENUE BONDS OF JOINT BUILDING AUTHORITY—AP-
PROVAL OF ELECTORATE—DEBT LIMITS.

Since revenue bonds of a joint building authority, incorporated
by a county and city pursuant to an enabling statute, are the
obligation of the authority, are payable from its revenues
comprised of rents to be received from such two governmental
units, but the full faith and credit of neither unit is pledged
although they do agree to pay a reasonable annual rental for
an absolute necessity as for other services, the bonds need not
be voted on by the electorate nor are they subject to the debt
limitations of the municipalities (CL 1948, § 123.951 *et seq.*).

9. MUNICIPAL CORPORATIONS—APPROVAL BY MUNICIPAL FINANCE COMMISSION—JOINT COUNTY-CITY BUILDING AUTHORITY REVENUE BONDS.

The municipal finance act, requiring the approval of the municipal finance commission of bonds issued by municipalities only refers to bonds issued by a municipality as defined in that act and it does not apply to revenue bonds issued by a joint county-city building authority (CL 1948, § 123.951 *et seq.;* § 131.1 *et seq.*).

10. SAME — CHARTERS — APPROPRIATION — LEASE FROM JOINT BUILDING AUTHORITY.

Charter requirement that city prior to letting a contract for the construction of any public work is required to make an appropriation or levy a tax for the full amount of its commitments, does not apply as to making of a proposed lease with county-city joint building authority, where in consideration of annual rental, the city receives services each year of the term (Detroit charter [1918], title 6, chap 7, § 2).

11. STATES—LOAN OF CREDIT—LEASE OF BUILDING FOR TERM OF YEARS.

Provisions of Constitution forbidding the State or a city or village from loaning its credit do not apply to the lease of a building by a governmental unit for governmental purposes for a term of years (Const 1908, art 8, § 25; art 10, § 12; CL 1948, § 123.951 *et seq.*).

12. SAME—LOAN OF CREDIT—INCREASE OF CONSIDERATION UNDER LONG LEASE.

Fact that joint building authority enabling act permits an increase of consideration under a proposed long-term lease of building by county and city from a joint building authority, not an unusual term in long-term leases, does not constitute a loan of government credit by the State or its governmental unit prohibited by the Constitution (Const 1908, art 8, § 25; art 10, § 12; CL 1948, § 123.951 *et seq.;* § 141.121).

13. ACTION—DECLARATION OF RIGHTS—QUESTIONS REVIEWABLE—INVALIDITY OF PROPOSED LEASE—ADMINISTRATIVE QUESTION.

Where danger of exceeding tax millage limitations of Constitution and charter by county and city in paying rent under proposed long-term lease with joint building authority for space for conducting governmental operations is remote, such a lease would not be held invalid therefor, in suit for declaration of rights since an administrative question is presented

which is to be met by such governmental units in the normal course of operating their respective units of government.

14. MUNICIPAL CORPORATIONS—CONVEYANCE OF PROPERTY—AP-PROVAL OF ELECTORS—CHARTERS.

A vote of the electorate of a city, having a population of 1,623,432 according to the last preceding Federal census, was not essential to the validity of a conveyance to joint county-city building authority in payment of future rent of property, recently valued by jury at $1,574,950, under charter permitting common council to sell and dispose of city-owned property valued at less than $1 per capita.

15. CONTRACTS—INTERIM CONTRACT BETWEEN JOINT BUILDING AU-THORITY AND INCORPORATING COUNTY AND CITY—PROFESSIONAL SERVICES.

Expenditures by county and city for professional services under an interim contract between joint county-city building authority and the incorporating county and city, which were undoubtedly in the interest of the city and the county, for a lawful purpose, and for a full consideration *held*, not a loan of credit to the authority nor the appropriation of tax money to be expended by others than the taxing authorities.

16. SAME—PUBLIC POLICY—LEASE BETWEEN PUBLIC BODIES.

Where act enabling a county and the municipality constituting its county seat to incorporate a joint building authority permitted a lease of the building erected thereunder for a term of not over 40 years, it would not be contrary to public policy to execute a contract of lease between such parties for use of space for governmental purposes for a period of 30 years (CL 1948, § 123.951 *et seq.*).

17. ACTION—DECLARATION OF RIGHTS—TAXPAYERS—PUBLIC CON-TRACTS.

A taxpayer is entitled to a declaration of rights under proper bill filed therefor questioning proposed issuance of $10,000,000 revenue bonds by joint building authority incorporated by county and city within which he resides (CL 1948, § 123.951 *et seq.*).

18. COSTS—PUBLIC QUESTIONS—DECLARATION OF RIGHTS—JOINT BUILDING AUTHORITY.

No costs are allowed in taxpayer's suit for declaration of rights under joint county-city building authority, a public question being involved (CL 1948, § 123.951 *et seq.*).

Appeal from Wayne; Murphy (Thomas J.), J. Submitted June 16, 1949. (Docket No. 69, Calendar No. 44,474.) Decided September 8, 1949.

Bill by Edward A. Walinske against Detroit-Wayne Joint Building Authority and others for decree fixing rights of parties under PA 1948 (1st Ex Sess), No 31. Bill dismissed. Plaintiff appeals. Modified and affirmed.

*Helen W. Miller,* for plaintiff.

*Raymond J. Kelly,* Corporation Counsel, and *John G. Dunn,* Assistant Corporation Counsel, for defendants City of Detroit and Detroit-Wayne Joint Building Authority.

*Gerald K. O'Brien,* Prosecuting Attorney, and *Arthur L. Robbins* and *Philip A. McHugh,* Assistant Prosecuting Attorneys, for defendant county of Wayne.

Butzel, J. The facts in this case are not controverted, most of them having been stipulated by the parties. The city hall of Detroit, the county seat of Wayne county, was built over three-quarters of a century ago, when the city had only 80,000 inhabitants. It was a comparatively small building, 4 stories in height, but at the time it was erected it was spacious enough to take care of city needs and provide office space for the various county offices and also court rooms for the Wayne circuit court.[*] Evidently the advantage of the joint use of one building by both the city and the county was already recognized years ago. However, the building soon became too small and inadequate to care for the

---

[*] See "The City of Detroit—Michigan," by C. M. Burton, Vol. 1, pp 346 and 352.

growing needs of the city and county, and in 1898 a county building, primarily designed as a courthouse, was erected.

The city has constantly grown. It now has a population of over 1,800,000 inhabitants. The city hall has become too small to take care of the city needs. The public offices are scattered in 31 locations, and much time is wasted by the public in going from place to place to consult city and county officers and records. The population of the county has also increased. In addition to Detroit, the cities of Highland Park, Hamtramck, Dearborn, several small municipalities as well as rural districts are situated within its borders. The county building also has become too small to care for the county needs. At the present time the city annually is paying $100,-397.59 to private owners for office space. The county is likewise paying to private owners approximately $233,132.61 per year for like purposes. The annual cost of city office space, including rent paid to private owners, the expense of operation and maintenance of city property, a fair rental from buildings owned and used by the city, exclusive of the city hall, and the annual cost of renting 60,000 square feet of additional space needed by the city, amounts to $791,963.41. The annual rent paid by the county for space outside the county building together with the cost of maintenance and operation of its building amounts to approximately $687,373.97. Together they aggregate $1,479,346.38.

It is estimated that the annual cost to the city for adequate space in a joint county and city building will be approximately $175,351.59 in excess of the present cost, while that to the county will be less than at present. This estimate is on the basis of plans for a new joint county-city building to be erected by an authority and principally financed by a revenue bond issue of $10,000,000 bearing interest at

the rate of 3 per cent. per annum, to be retired over a period of 30 years. The city is to occupy approximately 60 per cent. of the space, and the county about 40 per cent. of the space in such new joint building. A joint building would also result in economy of space and time, save many duplications of certain activities, properly safeguard irreplaceable and most important public records, and provide much needed court rooms and proper offices in which to conduct governmental activities. We need not elaborate on the benefits that all parties concede would result from a joint county-city building.

A majority of the electors of Wayne county, at the November 1947 election, voted for propositions in favor of a building for the joint use of county and city, and an $8,000,000 bond issue to defray its cost. A like majority voted to increase the millage, but the proposition was not carried as it did not receive the required two-thirds vote.

The demand for an adequate building for the joint use of city and county continued. The city condemned an entire city block centrally located at the intersection of two main thoroughfares. The award was $1,574,950 for the land and $53,850 for moving and incidental expenses and damages. The city now owns the property. At the 1948 first extra session of the State legislature, the governor sent to the legislature 2 messages in which he stated:

"17. County-city buildings. It is claimed in certain Michigan communities that enabling legislation should be enacted to permit county and city governments to construct buildings for their joint use. It is further claimed that it will add to the convenience of the public; will increase to a marked degree the efficiency of both county and city government, and will provide an economy of operation. I therefore submit the matter for your consideration." (March 30, 1948.)

"To the members of the State legislature:

"I have previously submitted a message intended to allow enabling legislation for the construction of buildings for joint city-county use. A question has now arisen as to whether this would permit construction of a building for the separate use of a county, a city, or a village, either jointly or separately. I intend this subject to be open for consideration." (April 16, 1948.)

The legislature at this session enacted PA 1948 (1st Ex Sess), No 31 (CL 1948, § 123.951 *et seq.*) referred to herein as the enabling act. We quote some of its provisions:

"Sec. 2. Any county and any city or village which is the county seat thereof, may incorporate an authority for the purpose of acquiring, furnishing, equipping, owning, improving, enlarging, operating and/or maintaining a building or buildings and the necessary site or sites therefor, for the use of such county and city or village."

"Sec. 4. The incorporation of such an authority shall be accomplished by the adoption of articles of incorporation by the legislative body of each incorporating unit. For such adoption, the affirmative vote of the majority of the members elect of each such legislative body shall be required. The articles of incorporation shall be executed for and on behalf of each incorporating unit by the following officers, to-wit: For the county, by the chairman of the board of supervisors and county clerk; for the city, by its mayor and city clerk and for the villages by its president and clerk. The clerk of each incorporating unit shall also affix to said articles of incorporation following the signatures thereto, a certificate in form substantially as follows: (gives the form used by the parties in the record)"

"Sec. 7. Such authority shall be a body corporate with power to sue and be sued in any court of this State. It shall possess all the powers necessary to

carry out the purpose of its incorporation and those incident thereto. The enumeration of any powers in this act shall not be construed as a limitation upon such general powers.

"Sec. 8. The authority and any incorporating unit or units shall have power to enter into a contract or contracts whereby the authority will acquire property contemplated by the terms of this act and lease the same to the incorporating unit or units for a period not to exceed 40 years. The consideration specified in such contract for such use shall be subject to increase by the authority if necessary in order to provide funds to meet its obligations."

"Sec. 11. For the purpose of acquiring, improving and/or enlarging any such building or buildings and the necessary site or sites therefor, and furnishing and equipping the same, the authority may issue self-liquidating revenue bonds in accordance with and subject to the provisions of Act No 94 of the Public Acts of 1933, as now or hereafter amended: Provided, That such bonds shall be payable solely from the revenues of such property, which revenues shall be deemed to include payments made under any lease or other contract for the use of such property: And provided further, That no such bonds shall be issued unless the property whose revenues are pledged has been leased by the authority for a period extending beyond the last maturity of the bonds. For the purpose of section 33 of said act, the limits of the authority shall be deemed to coincide with those of the county creating or joining in the creation thereof. If a sufficient referendum petition shall be filed as provided in said section requesting a referendum upon the question of the issuance of revenue bonds by the authority, then such question may be submitted by the commission of the authority at any general or special election to be held in the county."

"Sec. 13. When all bonds issued pursuant to the provisions of this act shall have been retired, then the authority may convey the title to the property

acquired thereunder to the incorporating unit or units in accordance with the provisions therefor contained in the articles of incorporation, or, if there be no such provisions, then in accordance with any agreement adopted by the respective governing bodies of the incorporating units."

It also sets forth the procedure which was duly followed by the city of Detroit and county of Wayne in incorporating a nonprofit corporation under the name of the "Detroit-Wayne Joint Building Authority," referred to herein as the authority, with the following powers and duties:

"Article 4.

"Powers and duties of the authority.

"Sec. 1. The authority shall be a body corporate with power to sue and be sued in any court of the State of Michigan.

"Sec. 2. The authority and any incorporating unit or units shall have power to enter into a contract or contracts whereby the authority will acquire property necessary to accomplish the purposes of this incorporation, and lease the said property to the incorporating units for a period not to exceed 40 years.

"Sec. 3. The authority shall have power to increase the consideration specified in any contracts of lease with the incorporating unit or units whenever during the term of the lease or leases an increase of rent is necessary to provide funds to meet its obligations.

"Sec. 4. For the purpose of accomplishing the objects of its incorporation the authority may acquire property by purchase, construction, lease, gift, devise or condemnation, and for the purpose of condemnation, it may proceed under the provisions of Act No 149 of the Public Acts of 1911, as now or hereafter amended, or any other appropriate statute.

"Sec. 5. For the purpose of acquiring, improving and/or enlarging any such building or buildings and the necessary site or sites therefor, and for furnishing and equipping the same, the authority may issue self-liquidating revenue bonds in accordance with and subject to the provisions of Act No 94 of the Public Acts of 1933, as amended: Provided, That such bonds shall be payable solely from the revenue of such property, which revenues shall be deemed to include payments made under any lease or other contract for the use of such property; And provided further, That no such bonds shall be issued unless the property whose revenues are pledged has been leased by the authority for a period extending beyond the last maturity of the bonds. For the purpose of section 33 of said act, the limits of the authority shall be deemed to coincide with those of the county creating or joining in the creation thereof. If a sufficient referendum petition shall be filed as provided in said section requesting a referendum upon the question of the issuance of revenue bonds by the authority, then such question may be submitted by the commission of the authority at any general or special election to be held in the county.

"Sec. 6. When all bonds issued pursuant to the provisions of the enabling act under which the authority is incorporated shall have been retired, the authority shall convey the title to the property acquired hereunder to the incorporating units in accordance with any agreement adopted by the respective governing bodies of the incorporating units.

"Sec. 7. All property owned by the authority shall be exempt from taxation by the State or any taxing unit therein.

"Sec. 8. The authority shall possess all the powers necessary to carry out the purpose of its incorporation, including the incidental powers necessary thereto. The powers herein granted shall be in addition to those granted by any statute or charter, and the enumeration of any power either in these articles of incorporation or in the enabling act shall

not be construed as a limitation upon such general powers.

"Sec. 9. The term of this corporation shall be 50 years."

The authority and the city and county, the incorporating units, thereupon entered into an interim contract. The county agreed to appropriate the sum of $350,000 and to pay to the authority said sum or such portion of it up to $240,000 for professional contracts, and not to exceed 7 per cent. of $240,000, as the authority should specify from time to time, for the purpose of meeting 40 per cent. of the necessary incidental expenses of the authority. The city agreed to appropriate $450,000 for like purposes, of which it was to pay such portions up to $360,000 for professional contracts, and 7 per cent. of the latter amount for operational expenses, the city thereby paying 60 per cent. of the professional expenses, et cetera, the same as the county was to pay 40 per cent. It was stated that the building was to provide an estimated gross area of 1,000,000 square feet. The authority agreed to apply the amount so paid by the city and county on future rentals, to proceed to have the necessary plans, drawings, designs and specifications prepared, and to lease 60 per cent. of the building to the city and 40 per cent. to the county. The lease has not yet been executed.

If, and when, the proposed bond issue has been retired, the authority would become the owner of the building. The statute, quoted above, provides that the authority may convey the title to the property, after the bonds have been retired, to the incorporating units. The articles of incorporation, quoted above, provide it shall be so conveyed, after the bonds have been retired according to agreement of the incorporating units at such time. The eventual disposition of the building is not now before us.

Questions naturally arose as to this method of erecting said building and the financing thereof, as well as the validity of the enabling act itself. Before proceeding, it was deemed advisable to have a declaration of rights. Edward Walinske, plaintiff, filed a bill in which the authority, the city and the county are named defendants. Some controversial questions had arisen and a declaratory judgment as well as an injunction to prevent all parties from further proceedings was sought by the bill. Plaintiff alleged that he is a citizen and taxpayer of Detroit and Wayne county. He further alleged that the authority contemplates the erection of the building at the cost of $10,000,000, which it expects to raise through revenue bonds secured by the proceeds from the proposed leases to the city and the county; that the city proposes to transfer to the authority the city block it has acquired for the site of a joint county-city building in consideration of credit for rent under the proposed lease. Defendants filed a joint sworn answer. After considering and discussing the law as applied to the facts in the case as shown by the pleadings, the exhibits, and a stipulation in regard to certain facts, the trial judge held the enabling act to be valid and found the proceedings taken and proposed to be taken to be regular and in accordance with the law, and dismissed the bill of complaint. Plaintiff has appealed and we shall discuss the various contentions he has raised on appeal.

Plaintiff contends that a vote of the electorate is required by the Constitution, the State statutes and the charter of the city of Detroit to authorize the proposed construction and issuance of bonds. He claims that the city and county by entering into a lease binding them for a long term of years to pay a rental sufficiently large to pay the operational cost of the contemplated building, the interest on the rev-

enue bonds as it becomes due, and also the principal of the bonds as it becomes due over the period of the lease, and the fact that the lease and the bonds are to be for the same term and when the bonds are retired the authority must convey the building to the city and the county, is in effect a contract to pay the cost of the building. He further claims that the proposed bonds to be issued by the authority are in fact full faith and credit bonds of the city and county and subject to their bond debt limitations. He admits that the bonds are to be issued by the authority, and that the city and county do not pledge their credit to pay the interest and principal directly, but that they do so indirectly by agreeing to pay rent to the authority sufficient to pay such interest and principal over a long period of years. He further claims that this is an illegal method of circumventing the law and constitutional provisions, as the city and county are attempting to do indirectly what they could not do directly. Defendants contend that the authority is the sole obligor on the bonds, and, as a separate corporate entity, is the builder and owner of the proposed building. That it does not propose to charge the city and county any exorbitant rental, it being estimated that the charge to the county may even be less than it is now paying for operational expenses and rental to private owners, while the cost of adequate quarters to the city will be less than $200,000 more than its present outlay as hereinbefore stated. And in addition the city and county will be able to function much more effectively and economically in adequate and spacious quarters, not only at the present time but for many years to come. They further claim there is no different legal effect in their leasing such quarters from the authority than there is in their present leases of space from private owners.

Plaintiff relies on *Ironwood Water-Works Co.* v. *City of Ironwood,* 99 Mich. 454, where the city attempted to purchase certain property subject to a large mortgage by making a small cash payment for the equity. The city did not assume the mortgage. The Court said:

"A municipal corporation cannot, either expressly or impliedly, incur a debt beyond the charter restriction. * * * In regard to its debts, a municipal corporation occupies a very different position from that of a private individual. If a city or county were authorized to purchase lands for city or county buildings, with a restriction upon the amount to be raised or the indebtedness to be incurred, and either should buy them subject to an existing mortgage, it would result, from relators' contention, that the public corporation was under no legal obligation to pay the mortgage, and it might be foreclosed, and the lands and buildings erected thereon sold upon the foreclosure. It needs no argument to show that this is contrary to public policy, and to the policy universally pursued in this State. * * *

"Obviously, the city of Ironwood will have no way to protect the property thus purchased except by payment of the lien thereon. * * * The city must pay the mortgage, or lose all the benefits to be derived from the purchase. It is expected and understood that it will pay it and the interest on it. Such was the evident intention of all parties.

"We therefore have reached the following conclusions:

"1. The charter does not authorize the purchase of this property subject to the mortgage.

"2. Municipal corporations cannot avoid restrictions upon the amount of indebtedness they may incur by buying property for public purposes subject to liens."

Appellees, however, call attention to the fact that this case involved an outright purchase of property,

while in the present case there is a proposed lease by which the city undertakes to pay an annual rental for much needed space.

Appellees further claim that the case was overruled at least in part by *Ludington Water-Supply Co.* v. *City of Ludington,* 119 Mich 480, which is somewhat similar to the case at bar. The Ludington Water-Supply Company made a contract with the city to supply water for 30 years, the city to pay an annual fee for each hydrant and watering trough installed and used. Subsequently a new contract was made for a period of 30 years, unless sooner terminated, on new terms and the city further agreeing to enter into a new contract or purchase the waterworks plant at the end of 30 years. The city was given an option to buy the plant, exercisable during 5-year periods, on notice. In holding the contract valid, we stated:

"The charter does limit the authority of the council in respect to incurring indebtedness, but the rule (recognized in *Putnam* v. *City of Grand Rapids,* 58 Mich 416) that a contract for future services, to be paid for as rendered, is not an incurring of indebtedness, is supported by abundant authority. *Smith* v. *Inhabitants of Dedham,* 144 Mass 177 (10 NE 782); *Davis* v. *City of Des Moines,* 71 Iowa 500 (32 NW 470); *Crowder* v. *Town of Sullivan,* 128 Ind 486 (28 NE 94, 13 LRA 647); *Davenport* v. *Kleinschmidt,* 6 Mont 502 (13 Pac 249); *Carlyle Water, Light & Power Co.* v. *City of Carlyle,* 31 Ill App 325; *Seward* v. *Town of Liberty,* 142 Ind 551 (42 NE 39); *Stedman* v. *City of Berlin,* 97 Wis 505 (73 NW 57); 1 Dillon, Municipal Corporations, § 136a."

A somewhat similar situation arose in *Bacon* v. *City of Detroit,* 282 Mich 150, when the county of Wayne, with borrowed funds, built an incinerator which the city of Detroit contracted to use for 10 years at an annual charge which it was claimed was

so large that the city would have paid for the plant within 10 years. It was agreed that the charges were subject to adjustment and that the county might permit others to use the incinerator plant. The city could not build the incinerator because of its bond limitations. Garbage had to be disposed of. The Court held it was proper for the city to contract for future services, and that in so doing it did not increase its funded and bonded debt. There was no agreement as to the eventual ownership of the incinerator. The Court held that "The terms of the contract are not for our consideration in the absence of actual fraud." And further that, "There is no fraud in reaching a desired end by legal means even though other means to that end would be illegal."

Plaintiff further relies on a series of cases holding that when a city contracts or leases a building at an annual rental sufficient to pay the cost of the building over the period of the lease, and providing that at the end of the term of the lease the building shall be conveyed to the city, it is in fact a contract to purchase the building by instalments and so subject to the debt limitations of the city for the full amount of the payments to be made under the lease. We cannot pass on the lease in the instant case as it has not been executed and is not before us, but we do find the main provisions as outlined are proper. There is no showing that the lease when executed will be subject to the objections of the above cases cited by the plaintiff.

In the instant case there is not even the slightest intent to increase the bonded debt. It is an administrative function of the city and county to enter into contracts for rental of space for governmental purposes, and without which they presently are, and as the population grows will continue to be in a much greater degree lacking the necessary facilities for functioning. Revenue bonds were authorized by the

legislature, making it possible for governmental units, limited in the amount that could be raised by taxes and the issuance of bonds, to furnish many public facilities without increasing their bonded debt, as they were to be paid for by the users thereof. PA 1933, No 94, as amended (CL 1948, § 141.101 *et seq.* [Stat Ann 1949 Rev § 5.2731 *et seq.*]). The validity of this method of raising funds has been repeatedly upheld. *Young* v. *City of Ann Arbor,* 267 Mich 241; *Attorney General, ex rel. Eaves,* v. *State Bridge Commission,* 277 Mich 373; *Oakland County Drain Commissioner* v. *City of Royal Oak,* 306 Mich 124. Both counsel for plaintiff and defendants cite many cases to uphold their contentions, but we believe the Michigan cases referred to as well as the majority of decisions from other jurisdictions uphold the legality of the proceedings under attack. See citations of cases in 71 ALR 1318 and 145 ALR 1362. The majority rule is stated in 71 ALR 1326 as follows:

"Where the lease is, in fact, intended as a lease, and the rentals are in fact such, rather than payments on the purchase price, the courts, without exception, hold that such a lease of property by a city, county, school district, or other political subdivision, with an option to purchase the same at a fixed price in addition to the rentals, does not create an indebtedness or liability within the meaning of a constitutional or statutory limitation of indebtedness. * * *

"And some of the cases reach this conclusion, even where the rentals paid are to be applied or credited on the amount of the purchase price, in the event the municipality elects to exercise the option to purchase. * * *

"But a contract which, though denominated and purporting to be a lease with option to purchase, is in fact a contract of purchase by payments in instalments, is treated as a contract of purchase rather than as a lease; and, according to the great weight of

authority, the fact that the so-called rentals are sufficient, if paid throughout the term of the lease, to cover the entire purchase price, and to enable the municipality to acquire the property without further payment, renders .the contract one of purchase rather than lease, and gives rise to an indebtedness, within the meaning of a constitutional or statutory debt limitation."

The recent case of *Kelley* v. *Earle,* 320 Pa 449 (182 A 501), on rehearing 325 Pa 337 (190 A 140), in many ways resembles the instant case and raises the same questions. The court stated the law so fully and tersely that we quote therefrom as follows:

"As far as municipalities are concerned if such obligations are met from current revenues from year to year, they cannot be considered debts in the constitutional sense, even though the aggregate or sum total of all payments should exceed the constitutional limitations. See *Wade* v. *Oakmont Borough,* 165 Pa 479 (30 A 959). The same rule applies to the State. * * *

"The Commonwealth is at present renting a number of structures throughout the State, paying at times high rental therefor. Many of these leases are for long terms and must be so, otherwise they could not be secured. Their validity has been sustained by our cases. The leased properties are essential to the conduct of governmental business and the comfort, health and security of our people. When the case was first here the difference between such leases and the one under consideration was that at the end of a definite period, upon compliance with the contract, the property leased was to be deeded to the Commonwealth. This the court held was a sale not a lease. We now have a very different situation. The instrument before us is a straight lease for a recurring necessity. The land leased is not deeded to the Commonwealth; it is still held by the authority, an independent public corporation. * * *

"It is urged that the transaction is in effect a purchase of capital assets by instalments. To sustain this conclusion, of necessity we must hold the agreement a sale; we have held the agreement is a lease and nothing more. If this were an outright purchase of property to be paid for in the future it would undoubtedly be within the constitutional objection, but it is not a purchase nor does it have the attributes of a purchase. * * * The fact that the proposed plan might be termed an evasion of the Constitution, would not condemn it unless such evasion was illegal. 'It is never an illegal evasion to accomplish a desired result, lawful in itself, by discovering a legal way to do it.' *Tranter* v. *Allegheny County Authority,* 316 Pa 65, 84 (173 A 289). The bonds of the authority are to be paid out of its revenues. The credit of the State is not pledged or bargained away."

The authority, not the city and county, is to pay for and erect the proposed building, and is to be the sole obligor on the proposed revenue bonds. The city and county will not pledge their full faith and credit, but they merely agree to pay over a term of years a reasonable annual rental for an absolute necessity the same as they would for any other services. It is true that a prudent investor in the revenue bonds will be attracted by the fact that the city and county agree to pay sufficient rent so as to pay the bonds and interest, that the moral risk of the lessors is the very best, and that a quasi-municipal corporation, like the authority is the obligor on the bonds. The method is new, but is being adopted by municipal corporations, under enabling acts, to provide for much needed facilities which they otherwise could not have without raising the tax rates they could charge or because of bond debt limitations. Inasmuch as the bonds proposed to be issued by the authority are not faith and credit obligations of its incorporators, they need not be voted on by

the electorate, nor are they subject to the debt limitations of the municipalities.

The plaintiff further contends that the bonds proposed to be issued by the authority must be approved by the municipal finance commission. The municipal finance act, CL 1948, § 131.1 *et seq.* (Stat Ann 1949 Rev § 5.3188[1] *et seq.*), only refers to bonds issued by a municipality as there defined. It does not apply to those issued by the authority.

Plaintiff next contends that prior to the execution of the proposed lease, the city must make an appropriation or levy a tax for the full amount of its commitments under the lease. Title 6, chap 7, § 2, of the charter of the city of Detroit (1918):

"No contract shall be let or entered into for the construction of any public work or for any work to be done or for the purchasing or furnishing of supplies for said city not herein provided for, and no such public work, performance, purchasing or supplying shall be commenced until approved by the common council, and until the contract therefor has been duly approved and confirmed by the common council, and a tax or assessment levied to defray the cost and expense of the same, and no such work, supplies and materials shall be paid for or contracted to be paid for, except out of the proceeds of the tax or the assessment thus levied."

This provision does not apply to the making of the proposed lease where in consideration of annual rental, the city receives services each year of the term. It is similar to the acquiring of any other future services by a contract. They must have the space and undoubtedly will make proper provision from year to year the same as it does for other services and as it does under present leases of property from private owners. It merely will rent from the authority instead of private owners.

Plaintiff further contends that the enabling act offends article 10, § 12, and article 8, § 25, of the Constitution, which forbids the city and county "to loan their credit." These provisions do not apply to the leasing of a building for a term of years. *Bacon* v. *City of Detroit, supra.* PA 1948 (1st Ex Sess), No 31, § 8, the enabling act, permits the increase of the consideration under the proposed lease. This is not at all unusual in long term leases which often provide for readjustment of the rent from year to year. The authority is a nonprofit corporation authorized by the statute, quasi-municipal in nature and in some respects similar to a drain district that issues revenue bonds. It neither can nor will charge an exorbitant rental, with 2 of the 3 directors named by the city and county respectively. The enabling act provides for the issuances of revenue bonds. The revenue bond act, CL 1948, § 141.121 (Stat Ann 1949 Rev § 5.2751), distinctly provides that the rates may be fixed and revised from time to time and shall provide sufficient return to pay the expenses of maintenance, payment of interest and principal on the bonds as they become due and payable.

Plaintiff further contends that the annual payments under the proposed lease may exceed the millage limitations prescribed by the Constitution and the charter. We have already reviewed the amount the city and county will be called upon to pay as compared with what they are expending at the present time for similar services. This is primarily an administrative question to be met by the city and county in the normal course of providing for expenses of operating. The danger of it exceeding the millage limitations is so remote that it requires no further consideration.

Plaintiff's next contention is that in deeding the city block, which the city has acquired for the site

of the building, to the authority in payment of future rent, without a vote of the electorate, the city will violate its charter. Title 3, chap 1, § 12(h), only authorizes the common council to sell and dispose of city-owned property having a value less than $1 per capita according to the last preceding census without approval of the electors. According to such census (1940) the city had a population of 1,623,432. As the jury in the recent condemnation case found the value of the land to be $1,574,950, a vote of the electorate was unnecessary.

Plaintiff next contends that the amounts the city and county are advancing under the interim contract for professional services, et cetera, are improper. Such expenditures are undoubtedly in the interest of the city and the county, for a lawful purpose, and for a full consideration. It is not a loan of credit to the authority nor the appropriation of tax money to be expended by others than the taxing authorities. It is an expenditure by the city and county and so primarily an administrative question as to the terms of the contract and the consideration received for such expenditure. See *Bowler* v. *Nagel,* 228 Mich 434 (37 ALR 1154) ; *Hays* v. *City of Kalamazoo,* 316 Mich 443 (169 ALR 1218).

Plaintiff's further contention that the lease for a period of 30 years is contrary to public policy is answered by the fact that the legislature in the enabling act prescribed a term of not over 40 years as being legal. All other contentions of the parties have been considered and are without merit and warrant no further discussion.

The bill should not have been dismissed as plaintiff is entitled to a declaration of rights and a decree may be entered in accordance with this opinion: otherwise the holding of the court below is affirmed and the plaintiff is not entitled to any further relief.

A public question being involved, no costs will be allowed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.