308 A.2d 802.

OPINION TO THE GOVERNOR.

AUGUST 8, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

ADVISORY OPINION requested by Governor relative to legislation creating Rhode Island Public Building Authority.

August 8, 1973

To His Excellency, Philip W. Noel
    Governor of the State of Rhode Island
        and Providence Plantations

We have received from Your Excellency a request for our written opinion in accordance with the provisions of sec. 2 of art. XII of amendments to the constitution of this state upon three specific questions which relate to the constitutionality of certain legislation enacted by the General Assembly.

Your letter states that during the January, 1958 legislative session, the General Assembly enacted legislation creating a Rhode Island Public Buildings Authority, P.L. 1958, ch. 163, secs. 1-22, now G.L. 1956 (1969 Reenact-

ment) ch. 14 of title 37; that at its January, 1973 legislative session the General Assembly passed an act, designated 73-H 6111, which amended the 1958 act in several respects; and that under the law as now amended, the Authority is empowered to acquire and construct public facilities, to maintain, repair and operate the same, and to issue revenue bonds, payable solely from revenues of such facilities, to finance the same.

Your letter further states that the Act, as amended, specifically provides in §37-14-3 that the Authority may construct judicial, rehabilitative, administrative and such other facilities as it is requested to initiate in order to provide effective public services in the state. It also appears from your letter that this same section further provides that a public facility project may be initiated by the Authority for the state only upon the request of either the General Assembly or the Governor, and that the Director of Administration is specifically authorized to enter into a contract of lease with the Authority for the leasing of such facilities upon such terms and conditions as shall be agreed to by the director and the Authority.

Your letter also contains the following statements. In accordance with the aim of the Act you are in the process of preparing a formal request for submission to the Authority to initiate a project on behalf of the state for the construction of a new office building which would house various state departments. It is contemplated that the Authority would construct the office building on land to be owned by it and would enter into a lease agreement to be negotiated by the Director of Administration pursuant to which the state would agree to pay an annual rental. The amount of the annual rental would be sufficient at least to enable the Authority to retire the revenue bonds issued to finance this project. This project would be undertaken under the authority set forth in ch. 14 of title

37, as amended, and all the requirements and formalities set forth in ch. 14 of title 37, as amended, would be observed. The only obligation of the state in connection with the proposed transaction would be the payment of an annual rental. You are also considering the submission of requests to the Authority to initiate other projects which would enable the state to provide, in a more effective and efficient manner, essential public services.

The following sections of the Act are also pertinent here.

Section 37-14-4, as amended, provides that revenue bonds issued under the provisions of the Act shall not be deemed to constitute a debt of the state or of any political subdivision thereof for a pledge of the faith and credit of the state or of any such political subdivision, but shall be payable solely from the funds provided therefor from revenue.

Section 37-14-21, as amended, by P.L. 1963, ch. 141, sec. 1 provides that a specific project, upon payment of all bonds and interest related to that project, be transferred to the governmental body leasing the project.

The three questions submitted to us read as follows:

"(1) Would the payments required to be made by the State under a long-term lease agreement for governmental facilities, such as judicial, rehabilitative, administrative and other such facilities as the Governor may request, which would be constructed by the Rhode Island Public Buildings Authority and leased to the State in accordance with the provisions contained in Chapter 37-14 of the General Laws of 1956, as amended, to provide effective public services to the people of this State, violate Article XXXI, Section 1, of the Amendments to the Rhode Island Constitution in that such lease payments constitute the incurrence of State debt, or a pledge of the faith of the State for the payment of the obligations of others, without the consent of the people?

"(2) If the answer to the preceding question is affirmative, would the payments required to be made

by the State under a year-to-year lease, which is renewable annually at the exclusive option of the State, for governmental facilities, such as judicial, rehabilitative, administrative and such other facilities as the Governor may request, which would be constructed by the Rhode Island Public Buildings Authority and leased to the State in accordance with the provisions contained in Chapter 37-14 of the General Laws of 1956, as amended, to provide effective public services to the people of this State, violate Article XXXI, Section 1, of the Amendments to the Rhode Island Constitution in that such lease payments constitute the incurrence of State debt or a pledge of the faith of the State for the payment of the obligations of others, without the consent of the people?

"(3) Do the provisions of the Rhode Island Public Buildings Authority Act, contained in Chapter 37-14 of the General Laws of 1956, as amended, constitute a violation of Sections 2 and 10 of Article IV as an unlawful delegation of legislative authority and of Article III as a violation of the distribution of power provision of the Rhode Island Constitution?"

## I

We address ourselves to the first question. Would the payments required to be made by the state under a long-term lease agreement violate sec. 1 of art. XXXI of amendments of our state constitution which reads, in pertinent part, as follows:

"The general assembly shall have no powers, hereafter, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars, except in time of war, or in case of insurrection or invasion; nor shall they in any case, without such consent, pledge the faith of the state for the payment of the obligations of others."

The issue raised by this question involves, basically, the nature of long-term lease arrangements between a state, or a municipality and a state authority, and whether a present indebtedness is thereby created on the part of the

state in entering into such a lease. This presents a question of first impression in this state. However, the issues involved in a consideration and determination of this question have arisen and been decided in a number of cases in other jurisdictions. Our examination of those cases reveals a split of authority on this question, the majority view holding that such leases do not constitute a "debt" within the meaning of state constitutional debt limitations and the minority view holding to the contrary.

After reading those cases we are convinced that the majority view is the sounder and more reasonable. Those cases hold generally that long-term lease arrangements, similar to those contemplated by our Act under which a state or municipality leases property with an option to purchase the same, do not give rise to an indebtedness or liability, within the meaning of the state constitutional limitations, for the stipulated optional purchase price or for the aggregate of all the rentals for the entire term, provided the instrument involved is in fact a lease and not a contract of purchase on the installment plan. *See* Annot., 145 A.L.R. 1362 (1943).

The rule has been succinctly stated by the Supreme Court of California in *City of Los Angeles* v. *Offner,* 19 Cal.2d 483, 122 P.2d 14, 16 (1942) as follows:

> "It has been held generally in the numerous cases that have come before this court involving leases and agreements containing options to purchase that if the lease or other agreement is entered into in good faith and creates no immediate indebtedness for the aggregate installments therein provided for but, on the contrary, confines liability to each installment as it falls due and each year's payment is for the consideration actually furnished that year, no violation is done to the constitutional provision. (cites omitted) If, however, the instrument creates a full and complete liability upon its execution, or if its designation as a 'lease' is a subterfuge and it is actually a condi-

tional sales contract in which the 'rentals' are installment payments on the purchase price for the aggregate of which an immediate and present indebtedness or liability exceeding the constitutional limitation arises against the public entity, the contract is void."

The following cases also follow the majority view. *Hall* v. *City of Baltimore,* 252 Md. 416, 250 A.2d 233 (1969), where a long-term lease with an option to purchase was upheld where the option was truly non-compulsory and the purchase price was to be determined by appraisal of the real value at the time of the exercise of the option; *Jefferson School Township* v. *Jefferson Township School Bldg. Co.,* 212 Ind. 542, 10 N.E.2d 608 (1937), where the court held that a lease to pay rent for 25 years on a school building to be constructed by a building corporation, which contained a provision that the corporation would give the building to the lessee when it had paid an amount equal to its investment and a reasonable return thereon, was a lease and not a contract to purchase, *City of La Habra* v. *Pellerin,* 216 Cal. App.2d 99, 30 Cal. Rptr. 752 (1963), which involved a 20-year lease of a police and fire station from a non-profit corporation.

Two of the leading cases which have followed the majority view are *Walinske* v. *Detroit-Wayne Joint Bldg. Authority,* 325 Mich. 562, 39 N.W.2d 73 (1949), and *Kelley* v. *Earle,* 325 Pa. 337, 190 A. 140 (1937).

In *Kelley,* the Supreme Court of Pennsylvania discussed this problem at great length. The Pennsylvania statute empowered the authority to enter into a 30-year lease with the state. The court upheld the constitutionality of the statute and pointed out that the state's undertaking was a lease rather than an outright contract to purchase, that on the payment of each annual rental there was a "present benefit to the State," that the bonds of the authority were being "paid out of its revenues," and that the credit of the state was not being "pledged or bargained away." The

court also expressed the view, with which we are in full accord, that:

> "In considering the question of constitutionality, due regard must be had to the Commonwealth's position, the projects to be undertaken, the character of the contract and the parties with whom it is made. To enforce a harsh, literal interpretation of the Constitution when considering the legality of the leases of the projects herein mentioned, which are essential to the life of the State and the comfort, health or security of its people, a construction opposed to all business concepts, would violate all rules of interpretation and cause loss of the respect necessary to the life of that document." *Id.* at 344-45, 190 A. at 144.

In *Kelley* the court also held that

> "As far as municipalities are concerned if such obligations are met from current revenues from year to year, they cannot be considered debts in the constitutional sense, even though the aggregate or sum total of all payments should exceed the constitutional limitation. (cite omitted) The same rule applies to the State." *Id.* at 347, 190 A. at 145.

*Walinske* v. *Detroit-Wayne Joint Bldg. Authority, supra,* involved the construction of a joint county and city building by an authority. The Michigan Supreme Court unanimously upheld the constitutionality of an act establishing an authority to construct needed office buildings and to lease the space to the city and county. The court there found that the lease was one for recurring needs, and, therefore, the future rentals were not an indebtedness in the constitutional sense, even though the Act provided that title to the lease facilities would vest in the city and county after the retirement of the bonds issued by the authority to finance the construction. The court cited with approval

the majority rule[1] as set forth in 71 A.L.R. 1326, as well as in *Kelley* v. *Earle, supra,* and then said:

> "The authority, not the city and county, is to pay for and erect the proposed building, and is to be the sole obligor on the proposed revenue bonds. The city and county will not pledge their full faith and credit, but they merely agree to pay over a term of years a reasonable annual rental for an absolute necessity the same as they would for any other services. It is true that a prudent investor in the revenue bonds will be attracted by the fact that the city and county agree to pay sufficient rent so as to pay the bonds and interest, that the moral risk of the lessors is the very best, and that a quasi-municipal corporation like the authority is the obligor on the bonds. The method is new, but is being adopted by municipal corporations, under enabling acts, to provide for much needed facilities which they otherwise could not have without

---

[1]In *Walinske* v. *Detroit-Wayne Joint Bldg. Authority,* 325 Mich. 562 at 579-80, 39 N.W.2d 73 at 80 (1949), the court stated the majority rule as follows:

" 'Where the lease is, in fact, intended as a lease, and the rentals are in fact such, rather than payments on the purchase price, the courts, without exception, hold that such a lease of property by a city, county, school district, or other political subdivision, with an option to purchase the same at a fixed price in addition to the rentals, does not create an indebtedness or liability within the meaning of a constitutional or statutory limitation of indebtedness. * * *

" 'And some of the cases reach this conclusion, even where the rentals paid are to be applied or credited on the amount of the purchase price, in the event the municipality elects to exercise the option to purchase. * * *

" 'But a contract which, though denominated and purporting to be a lease with option to purchase, is in fact a contract of purchase by payments in instalments, is treated as a contract of purchase rather than as a lease; and, according to the great weight of authority, the fact that the so-called rentals are sufficient, if paid throughout the term of the lease, to cover the entire purchase price, and to enable the municipality to acquire the property without further payment, renders the contract one of purchase rather than lease, and gives rise to an indebtedness, within the meaning of a constitutional or statutory debt limitation.' "

raising the tax rates they could charge or because of bond debt limitations. Inasmuch as the bonds proposed to be issued by the authority are not faith and credit obligations of its incorporators, they need not be voted on by the electorate, nor are they subject to the debt limitations of the municipalities." *Walinske v. Detroit-Wayne Joint Bldg. Authority, supra* at 581-82, 39 N.W.2d at 81.

The question of long-term lease financing with options to purchase has also been considered in the following cases which have generally held that such an option does not create an indebtedness in the constitutional sense. *Scott* v. *Alabama State Bridge Corp.,* 233 Ala. 12, 169 So. 273 (1936); *Corhran* v. *Middleton,* 14 Del. Ch. 295, 125 A. 459 (1924); *Burlington Water Co.* v. *Woodward,* 49 Iowa 58 (1878); *Ambrozich* v. *City of Eveleth,* 200 Minn. 473, 274 N.W. 635 (1937); *State ex rel. Thomson* v. *Giessel,* 271 Wis. 15, 72 N.W.2d 577 (1955); *State ex rel. LaFollette* v. *Reuter,* 33 Wis.2d 384, 147 N.W.2d 304 (1967); *Davidson* v. *City of Elmira,* 180 Misc. 1052, 44 N.Y.S.2d 302 (1943); *aff'd per curiam,* 267 App. Div. 797, 46 N.Y.S.2d 655 (1943).

The majority view has also been followed in the following cases in which the courts sustained statutes creating independent authorities empowered to construct facilities and lease them to state agencies, the rentals being used in payment of the authorities' bonds. *McArthur* v. *Smallwood,* 225 Ark. 328, 281 S.W.2d 428 (1955) (state office building); *Berger* v. *Howlett,* 25 Ill.2d 128, 182 N.E.2d 673 (1962) (state hospital, penitentiary); *State ex rel. Fatzer* v. *Kansas Armory Board,* 174 Kan. 369, 256 P.2d 143 (1953) (state armories); *Petition of Board of Public Buildings,* 363 S.W.2d 598 (Mo. 1962) (state office building); *Application of Oklahoma Capitol Improvement Authority,* 410 P.2d 46 (Okla. 1966) (public safety buildings).

We have read and considered some of the cases which follow the so-called minority view, but, having concluded

that the majority view is the sounder and more reasonable, we see no need to discuss them here other than to state again our agreement with the majority rule.

It is our opinion that the lease payments contemplated under the provision of ch. 14 of title 37, do not create a debt against the state within the constitutional prohibition in art. XXXI, sec. 1, since they are for recurring obligations and are to be paid out of current revenues. Nor does the statute contemplate a pledge of the faith of the state for the payment of the obligations of others. Our answer to the first question is "No."

Our conclusion that ch. 14 of title 37, contemplates a lease, rather than a purchase or a contract to purchase, is not affected by the provisions of §37-14-21, which provides that a specific project, upon payment of all bonds and interest related to that project, be transferred to the governmental body leasing the project. *See* 71 A.L.R. 1326, *supra. Compare Kelley* v. *Earle; Walinske* v. *Detroit-Wayne Joint Bldg. Authority,* both *supra.*

## II

In view of our answers to the first question, we are not called upon to answer the second.

## III

This brings us to the question of whether the provisions of the Act constitute a violation of secs. 2 and 10 of art. IV as an unlawful delegation of legislative authority and of art. III as a violation of the distribution of power provision of our state constitution. Our answer to this question is also "No."

The justices of this court had occasion to discuss this question of delegation of legislative power in *Opinion to the Governor,* 88 R. I. 202, 145 A.2d 87 (1958). In finding that the statute creating the Rhode Island Industrial Building Authority, vesting necessary powers in such Authority to carry out its legislatively defined purposes, did

not involve an unconstitutional delegation of legislative authority, the justices said:

> "It is now generally recognized that certain limited portions of the legislative power, if confined in expressly defined channels, may be vested by the general assembly in other bodies which it authorizes to act as its agents or auxiliaries in carrying out its constitutional duties. Numerous instances could be cited in this and other jurisdictions, both federal and state, where such limited authorization has been judicially approved and held not to be in conflict with the well-established principle of law that [legislative] power cannot be lawfully delegated. But this view is so universally accepted we deem it unnecessary to cite such instances here." *Id.* at 205, 145 A.2d at 89.

We see no reason for an extensive discussion of this question. In our opinion the powers vested in the Authority are so limited and restricted by the provisions of the statute that they do not constitute an unlawful delegation of legislative power. The General Assembly has recognized the need to rely on the executive branch of state government in determining the particular public facilities needed to provide essential public services, but the statute does not confer on, or delegate to, the Authority the power to make law itself, nor to say what the law shall be. The powers conferred by the statute are discretionary in nature, of an executive and administrative character, and well defined and limited. The purposes of the statute are clear and the authority is furnished by the statute with well-defined guidelines within which it may function. *See Kelley* v. *Earle,* 325 Pa. at 352-53, 190 A. at 147.

For the foregoing reasons, it is our opinion that the provisions of ch. 14 of title 37, as amended, do not violate secs. 2 and/or 10 of arts. IV or III of our state constitution.

Thomas H. Roberts
Thomas J. Paolino
Thomas F. Kelleher
John F. Doris

Mr. Justice Joslin did not participate in the consideration of the inquiries posed herein.

*Tillinghast, Collins & Graham, James J. Skeffington, Edwin K. Hall; James J. Jerue,* Executive Counsel to the Governor, for the Governor.